

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| ROGER ALLEN RAYMOND, | * | CIV 99-1041 |
| | * | |
| Petitioner, | * | |
| | * | |
| -vs- | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| DOUGLAS WEBER, Warden, | * | |
| South Dakota State Penitentiary, | * | |
| | * | |
| Respondent. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### BACKGROUND

Petitioner was convicted of sexual contact with a minor, based on the allegations of his seven-year-old niece, in the Fifth Judicial Circuit, Brown County, South Dakota, on June 29, 1994. His sentence was enhanced under the South Dakota "habitual offender statute." The South Dakota Supreme Court reversed the 1994 conviction on November 29, 1995, holding that the defendant was denied a fair trial by the introduction of a social worker's testimony as to the credibility of the defendant's niece. State v. Raymond, 540 NW2d 407 (S.D. 1995). On June 14, 1996, petitioner, on retrial, was convicted of sexual contact with a minor and of being an habitual offender. He was sentenced to life in prison without possibility of parole. On May 21, 1997, the South Dakota Supreme Court affirmed his 1996 conviction. State v. Raymond, 563 NW2d 823 (S.D. 1997). The only issues presented on appeal to the South Dakota Supreme Court were (1) whether petitioner had knowingly and intelligently waived the right to counsel at trial, and (2) whether his sentence constituted cruel and unusual punishment.

On June 4, 1997, petitioner filed in this court a petition for a writ of habeas corpus under 28 U.S.C. § 2254, CIV 97-1020, seeking to attack his 1996 conviction. The issues presented by the petition were (1) whether his conviction was obtained by the use of evidence gathered pursuant to an unlawful arrest, and (2) whether his conviction was obtained by the unconstitutional failure of the prosecution to disclose exculpatory evidence. The petition was

dismissed without prejudice for failure to exhaust state court remedies as to the issues presented in the petition.

On March 2, 1998, petitioner filed a second petition for a writ of habeas corpus under 28 U.S.C. § 2254, CIV 98-1010, challenging his 1996 conviction on the grounds (1) that petitioner's conviction was obtained by the use of evidence obtained pursuant to an unlawful arrest, (2) that the prosecution failed to disclose evidence favorable to the petitioner, (3) that the petitioner received ineffective assistance of trial counsel, and (4) it was a vindictive prosecution. Petitioner also referred to his memorandum wherein he also alleged pre-indictment delay and prosecutorial misconduct. The petition was dismissed without prejudice for failure to exhaust state court remedies.

On September 30, 1999, petitioner filed yet another writ of habeas corpus under 28 U.S.C. § 2254, CIV 99-1041. Petitioner sought to challenge his 1996 conviction on the same grounds raised in the 1998 petition. The petition showed that petitioner attempted to file a state court habeas petition in South Dakota Circuit Court, Brown County, in February of 1998, and that the state court petition was still pending. What had actually occurred was that petitioner's correspondence to the state court was forwarded to his state court appointed counsel. Upon inquiry from the federal court, petitioner's court appointed counsel stated that he would not be filing a petition until he received a letter from petitioner setting forth his grounds for relief. This instant petition was dismissed without prejudice for failure to exhaust state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A). Petitioner appealed and his appeal was dismissed.

On November 1, 2001, this Court entered an order (Doc. 26) directing petitioner to file an amended petition for writ of habeas corpus in federal district court and finding petitioner's attempt to file a state habeas petition to be "futile." Accordingly, petitioner filed, on November 8, 2001, an amended petition for habeas corpus (Doc. 27).

On April 19, 2002, this Court issued an order (Doc. 32) granting the petitioner's application to proceed *in forma pauperis* and appointed federal habeas counsel. With the assistance of appointed counsel, petitioner filed a second amended habeas petition (Doc. 38). Shortly thereafter, respondent filed a motion to dismiss (Doc. 40). The Court denied (Doc. 43)

2

this motion to dismiss.  Respondent then answered (Doc. 45) petitioner's application for writ of habeas corpus.

On May 11, 2007, petitioner filed a motion for summary judgment (Doc. 47), along with a brief in support thereof and a statement of undisputed material facts.  Respondent does not challenge petitioner's statement of undisputed material facts, only the conclusions petitioner draws from those facts.  Petitioner seeks summary judgment on seven separate grounds.  Each of these claims will be addressed below, in the context of the motion for summary judgment and as to whether petitioner is entitled to habeas relief.

DISCUSSION

I.   STANDARD OF REVIEW

A.   SUMMARY JUDGMENT STANDARD

The summary judgment standard is well known and has been set forth by this court in numerous opinions.  *See* Hanson v. North Star Mutual Insurance Co., 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Trip County, 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998).  Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c); Donaho v. FMC Corporation, 74 F.3d 894, 898 (8th Cir. 1996).  The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995).  "[T]he burden on the moving party may be discharged by 'showing'– that

3

is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." Celotex Corporation v. Catrett, 477 U.S. at 325.  Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.  In considering the motion for summary judgment, this Court must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

**B.    FEDERAL HABEAS CORPUS REVIEW**

The United States Court of Appeals for the Eighth Circuit has set forth the standard for granting habeas relief to a state prisoner under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> A district court may grant an inmate's § 2254 application for habeas corpus on a claim "adjudicated on the merits in State court proceedings" only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

Thai v. Mapes, 412 F.3d 970, 975 (8th Cir. 2005).

Challenges to purely legal questions resolved by the state court are reviewed under § 2254(d)(1).  Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).  "Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529

4

U.S. at 412. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. *Id.* at 379.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. *Id.* at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (*citing* Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was objectively unreasonable, not when it was merely erroneous or incorrect." *Id.* (quoting Williams, 529 U.S. at 410-11). To be unreasonable, the state court's application of the Supreme Court precedent "must have been more than incorrect or erroneous." Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). Additionally, even though these clauses have independent meaning, *see id.* at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards. Lockyer v. Andrade, 538 U.S. 63, 70-73, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).

Challenges to state court factual determinations only are reviewed under § 2254(d)(2). Under Section § 2254(d)(2), a federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). The district court must "accord a presumption of correctness to state court determinations of factual issues . . .", Tyler v. Purkett, 413 F.3d 696, 701 (8th Cir. 2005); 28 U.S.C. § 2254(e), and the petitioner has the burden of rebutting this presumption by clear and convincing evidence, 28 U.S.C. § 2254(e)(1). *See also* Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record) and Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003).

5

Challenges involving mixed questions of law and fact are reviewed *de novo* and are resolved under the "unreasonable application" prong of § 2254(d)(1). Garcia v. Bertsch, 470 F.3d 748, 754 (8th Cir. 2006), Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000), and Harpster v. State of Ohio, 128 F.3d 322, 327 (6th Cir. 1997). " The mixed question rubric is designed to allow appellate and habeas corpus courts to exercise continuing control over legal principles that are suffused with a complex of values and that can be given meaning only through . . . application to the particular circumstances." Miller v. Fenton, 474 U.S. 104, 114-116 (1985) (internal quotations omitted).

These deferential review standards apply to any claim that was "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). A state has adjudicated a petitioner's claim on the merits for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). Claims which have not been adjudicated on the merits in state court proceedings are reviewed *de novo* by the federal district court. *See* Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("Because this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review").

## II.   PETITIONER'S SECTION 2254 CLAIMS

### A.   CLAIM I: SIXTH AMENDMENT CLAIMS

Petitioner's first claim for habeas relief is based upon the contention that the trial court infringed his Sixth Amendment rights by allowing him to shed his appointed counsel and proceed *pro se* at his competency hearing, trial and sentencing hearing. Whether this petitioner was actually deprived of his right to counsel presents a mixed question of law and fact. *See* Strickland v. Washington, 466 U.S. 668, 698 (1984).

6

The Sixth[1] and Fourteenth[2] Amendments guarantee a criminal defendant in a state proceeding the right to counsel. <u>Gideon v. Wainwright</u>, 372 U.S. 335, 342-44, 83 S.Ct. 792, 795-97, 9 L.Ed.2d 799 (1963). "The Sixth Amendment's right-to-counsel guarantee recognizes the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty." <u>Johnson v. Zerbst</u>, 304 U.S. 458, 462-63, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." <u>United States v. Cronic</u>, 466 U.S. 648, 654, 104 S.Ct. 2039, 2039, 80 L.Ed.2d 657 (1984).

While not expressly stated in the Sixth Amendment, a clearly established corollary to the right to counsel is the "right to dispense with a lawyer's help," <u>Adams v. United States ex rel. McCann</u>, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942), and to represent oneself, <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 174, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (referring to "the long-standing recognition of a right of self-representation in federal and most state courts"). Before allowing a defendant to waive his right to counsel, however, a court must be satisfied that the defendant is competent to do so. <u>Godinez v. Moran</u>, 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). The Supreme Court has explained that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." <u>Faretta v. California</u>, 422 U.S. 806, 835, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975) (<i>quoting</i> <u>Adams</u>, 317 U.S. at 279)).

---

[1]  The Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to have the assistance of counsel for his defence."

[2]  The Fourteenth Amendment provides, in relevant part, that "nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Generally, a court need not *sua sponte* order an evaluation to determine a defendant's competence to waive counsel; "[a]s in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence." Godinez, 509 U.S. at 401 fn. 13. Unless "evidence raises sufficient doubt" about a defendant's competence, further inquiry is not required. Branscomb v. Norris, 47 F.3d 258, 261 (8th Cir. 1995); *see also* United States v. Day, 998 F.2d 622, 627 (8th Cir. 1993) (holding that a district court did not err when it did not conduct a competency hearing prior to allowing a defendant to proceed *pro se* at sentencing). Accordingly, whether a competency evaluation is warranted is a determination within the discretion of the court. *See* United States v. Vamos, 797 F.2d 1146, 1150-51 (2d Cir. 1986).

Beyond determining that a defendant who seeks to waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing, intelligent, and voluntary. Godinez, 509 U.S. at 400 (*citing* Parke v. Raley, 506 U.S. 20, 28-29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992) (The standard is whether the waiver represents a voluntary and intelligent choice among the alternative courses of action open to the defendant)). Whether a waiver of counsel is valid depends "in each case upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *see* Wilkins v. Bowersox, 145 F.3d 1006, 1012 (8th Cir. 1998) (stating that "[i]n the waiver of counsel context, . . . a defendant's background and personal characteristics are highly relevant in determining the validity of such a waiver").

When reviewing a waiver of a defendant's right to counsel, an appellate court will uphold a waiver and conclude it is knowing and intelligent if either (1) the court adequately warns the defendant about the dangers and disadvantages of proceeding *pro se* or (2) the record as a whole demonstrates "that the defendant knew and understood the disadvantages of self-representation." United States v. Stewart, 20 F.3d 911, 917 (8th Cir. 1994). An on-the-record colloquy exploring the dangers of self-representation is recognized as the preferred method of substantiating a waiver's validity. *See* Meyer v. Sargent, 854 F.2d 1110, 1114-15 (8th Cir. 1988) (indicating the court favors "a specific warning on the record of the dangers and disadvantages of

8

self-representation" when a defendant seeks to proceed *pro se*).  Moreover, in light of the importance of the assistance of counsel in our adversarial system of justice, courts are to "indulge every reasonable presumption against waiver [of the right to counsel]." Johnson, 304 U.S. at 464.

    In this habeas petition, petitioner claims under Cronic[3] that his Sixth Amendment right to counsel was constructively denied during the competency hearing and during the balance of the criminal proceedings against him because his waiver of this right was not knowing, intelligent, and voluntary.  Petitioner requests that the Court review his waiver of counsel at three different "critical stages," namely the competency hearing, the trial proceedings, and the sentencing hearing.  While the petitioner would like to cast these claims as three separate and distinct grounds for relief, the South Dakota Supreme Court correctly framed the threshold issue, which is whether the trial court erred in finding that petitioner was competent to knowingly, intelligently, and voluntarily waive counsel.  *See* State v. Raymond, 1997 SD 59, ¶ 7, 563 NW2d 823, 825.  The South Dakota Supreme Court affirmed the trial court finding that petitioner was competent to waive his right to counsel.

    Courts have widely held that "a defendant who waives the right to counsel is entitled to withdraw that waiver and reassert the right." United States v. Taylor, 933 F.2d 307, 311 (5th Cir. 1991) (*citing* Beto v. Martin, 396 F.2d 432 (5th Cir.1968), United States v. Mortensen, 860 F.2d 948, 950 (9th Cir. 1988) (waivers of constitutional rights should not, "once uttered, be forever binding"), United States v. Fazzini, 871 F.2d 635, 643 (7th Cir. 1989) ("[o]nce the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver"), and Harig v. Wolff, 414 F.Supp. 290, 296 (D.Neb.1976) (unless changes in conditions occur, an original waiver is constitutionally effective at the subsequent sentencing

---

    [3] United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).  A Cronic claim is one "in which because of some special circumstance, including complete denial of counsel, a defendant need not show prejudice." James v. Harrison, 389 F.3d 450, 455-56 (4th Cir. 2004) (*referring* to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).  Petitioner's Cronic claim is discussed in further detail at page 12, *infra*.

proceedings).  However, petitioner does not request habeas relief based on a claim that he was improperly denied his right to withdraw the waiver.[4]

Because petitioner's challenge involves a mixed question of law and fact, I review his claim *de novo* under the "unreasonable application" prong of § 2254(d)(1).  As previously mentioned, the invocation of waiver of counsel necessitates two inquiries: (1) whether petitioner is competent to represent himself; and (2) whether petitioner's waiver of his constitutional rights was knowing, intelligent, and voluntary.

On the issue of competency, petitioner contends that even though he was represented by counsel during his motions and competency hearings, his court appointed counsel in each situation took no action on his behalf and permitted the petitioner to represent himself in the very hearing seeking to determine whether he was in fact competent to represent himself and to stand trial.

Respondent contends that the record supports the trial court's determination that petitioner was competent to stand trial.  Thus, respondent argues, under <u>Godinez</u>, petitioner was competent to waive his right to counsel.

In <u>Godinez</u>, the United States Supreme Court held that the competency standard for self-representation is the same as the standard for standing trial, which is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'"  509 U.S. at 396 (*quoting* <u>Dusky v. United States</u>, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)).  In other words, "the focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings." *Id.* at 401 fn. 12.

I note that "retrospective determinations of whether a defendant is competent to stand trial or to plead guilty are strongly disfavored."  <u>Weisberg v. State of Minn.</u>, 29 F.3d 1271, 1278 (8th Cir. 1994).  Further, Congress has instructed the courts that competency is a factual issue

---

[4] At his sentencing hearing, petitioner did request an attorney to appeal his conviction to the South Dakota Supreme Court.  However, this request to revoke his waiver of counsel only pertained to his appeal, not to the sentencing hearing as he is now claiming.

for the state courts and that the state courts' findings are presumptively correct. <u>Lyons v.</u>
<u>Luebbers</u>, 403 F.3d 585, 593 (8th Cir. 2005). Petitioner fails to supply the Court, as he is
required to do, with clear and convincing evidence that the South Dakota courts' factual findings
were erroneous. Likewise, the ruling of the South Dakota Supreme Court is not contrary to, nor
is it an unreasonable application of United States Supreme Court precedent. Having said this, I
will further explicate the issue of petitioner's competency to waive his right to counsel.

Dr. William Petit's testimony on the issue of competency to stand trial appears to
constitute "fair support" for the trial court's finding that petitioner was competent to waive his
right to counsel. Dr. Petit testified that petitioner: (1) was not exhibiting any signs of depression
or hallucinations; (2) was able to relate the nature of the offense, the types of pleas available, and
the consequences of acquittal and conviction; (3) was coherent and rational during the
evaluation; (4) was oriented; (5) was not exhibiting any looseness of association; and (6) was
competent to assist in and conduct his own defense in a rational manner. While I do not dispute
the presence of evidence that could have led a reasonable fact finder to question petitioner's
mental faculties (e.g. petitioner's low to average intelligence, petitioner's history of hallucinatory
and psychotic episodes, a seemingly irrational or illogical decision rejecting assistance from court
appointed counsel and instructing appointed counsel not to challenge petitioner's competency to
represent himself), I cannot shy away from the presence of evidence pointing in the opposite
direction (e.g. Dr. Petit's testimony and petitioner's prior competency determination in 1992). In
short, the medical evidence lends at least fair support to the proposition that petitioner possessed
a rational understanding of the proceedings against him.

Additionally, the record demonstrates that petitioner was active and articulate at trial,
raising objections and examining witnesses (e.g. properly refreshed witnesses' recollections,
adequately confronted witnesses on cross-examination with testimony elicited on direct
examination, and asked appropriate follow-up questions), and that he had an extensive criminal
record and had displayed some savvy about the functioning of the criminal justice system. <i>Cf.</i>
<u>Day</u>, 998 F.2d at 626-27 (upholding validity of waiver of counsel at sentencing where
defendant's criminal record showed previous contact with criminal justice system sufficient to
supply general knowledge of dangers and disadvantages of self-representation and where

11

defendant's conduct while representing himself demonstrated his understanding of the proceeding and its procedures). All of this is to say that, by virtue of the conflicting and credible evidence on both sides of the ledger, petitioner has failed to carry his heavy burden of demonstrating by clear and convincing evidence that the trial court erred in its factual findings about his competency. Accordingly, the record fairly supports the trial court's finding that petitioner was competent to waive his right to counsel.

Petitioner next argues that the trial court's finding that he knowingly, intelligently, and voluntarily waived his right to counsel was erroneous. Respondent contends the record supports the trial court's findings on this issue as well because the trial court thoroughly advised petitioner of his constitutional rights and the dangers of waiving them. The trial court did fully inform petitioner of the various rights he was waiving and disadvantages of waiving those rights. However, the knowing and voluntary prong of the Godinez standard clearly requires more than merely exposing a defendant to information - it requires that "the defendant actually does understand the significance and consequences of a particular decision and . . . the decision is uncoerced." 509 U.S. at 401 fn. 12. A trial court should not merely take the defendant's statement that he is knowingly and intelligently waiving counsel "at face value." Wise v. Bowersox, 136 F.3d 1197, 1203 (8th Cir. 1998). "A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances." Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (plurality). Reviewing the circumstances in this instance (e.g. petitioner previously convicted on a similar charge, petitioner previously tried on the same charge, and petitioner's extensive criminal history) lends fair support to the trial court's conclusion that petitioner understood the significance and consequences of his decision to proceed pro se. Consequently, petitioner has failed to carry his heavy burden of demonstrating by clear and convincing evidence that the trial court erred in its factual findings with respect to a knowing, intelligent, and voluntary waiver of his right to counsel.

Even though I have found petitioner's waiver of the right to counsel valid, my analysis is incomplete because petitioner also makes the claim that his Sixth Amendment right was violated when his counsel was either constructively absent or prevented from assisting him at his

competency hearing. In <u>Cronic</u>, the United States Supreme Court held that a defendant's conviction must be automatically reversed "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." 466 U.S. at 659 fn. 25. Further, the Supreme Court noted that the presence of lawyers "is essential because they are the means through which the other rights of the person on trial are secured." *Id.* at 653.

With this said, I find petitioner's argument unavailing. As a starting proposition, "[a] defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard." <u>McKaskle</u>, 465 U.S. at 174. "The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law. . . to question witnesses, and to address the court . . ." *Id.* The court may appoint standby counsel to assist a defendant who chooses to proceed *pro se. Id.* at 184. But, a defendant does not have a constitutional right to hybrid representation. <u>United States v. Swinney</u>, 970 F.2d 494, 498 (8th Cir. 1992). A trial court may properly require the defendant to choose either to proceed *pro se,* with or without the help of standby counsel, or to utilize the full assistance of counsel, who would present the defendant's defense. *See id.* The defendant remains free, of course, to elevate standby counsel to a lead counsel role, thereby waiving the defendant's <u>Faretta</u> rights. <u>McKaskle</u>, 465 U.S. at 182. "Once a *pro se* defendant invites or agrees to any substantial participation by [standby] counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously . . . request[s] that standby counsel be silenced." *Id.* at 183.

In petitioner's case, he invoked his right to proceed *pro se* during his April 10, 1996, pretrial motion hearing. The trial court warned petitioner of the hazards of self-representation and recommended to petitioner that he continue to use his lawyer to assist him. At the state's request, the trial court authorized a twenty-four hour recess in order for petitioner to reconsider his decision to waive counsel and for the state to research legal issues concerning self-representation. The next day the trial court fully informed petitioner of the various rights he was waiving and the disadvantages of waiving those rights and then accepted his waiver. A couple of weeks later the trial court decided *sua sponte* to order a psychological evaluation of petitioner, to hold a competency hearing, and to appoint standby counsel to assist petitioner at this hearing. At

13

the competency hearing, petitioner again expressly and unambiguously reiterated his request to represent himself without interference from his "standby" counsel and directed his "standby" counsel to not contest his competency. Petitioner clearly wanted to assert his theory of the case, which was contrary to the theory espoused by his appointed counsel, and to control the content of his defense.

Petitioner was clearly within his rights to reject assistance from standby counsel. Further, the right to appear *pro se* does not include an absolute ban on standby counsel's unsolicited participation in a hearing. *Id.* at 950. The trial court records provide fair support for the conclusion that petitioner's court-appointed standby attorney exercised appropriate due diligence and legal judgment in representing petitioner both prior to and during the competency hearing. Appointed counsel's billing statement reflected time spent on some of the following items: (1) preparation for cross-examination of Dr. Petit; (2) examination of petitioner's prior psychological reports; (3) examination of jail incident logs; (4) examination of various documents drafted by petitioner; and (5) legal research. Also, counsel's letter submitted along with the billing statement said that he had "put in a substantial amount of time in preparation for this hearing." In representing his client, appointed counsel utilized his own independent legal judgment and experience and determined that he would not undermine his client's constitutional right to represent himself. *Cf id.* at 178 ("The objectives underlying the right to proceed *pro se* may be undermined by unsolicited and excessively intrusive participation by standby counsel"). In short, the trial court's appointment of standby counsel struck an appropriate balance between guarding petitioner's rights and allowing petitioner's independent voice to be heard.

It is also clear that the trial court used its own independent judgment when it evaluated all the circumstances and evidence and determined that petitioner was competent to represent himself. The trial court had extensive interaction with petitioner. The court records reveal that the trial court scrupulously protected petitioner's constitutional rights. Given the underlying record and the standard of review on habeas, this Court should not substitute its judgment in the place of the reasoned judgments of the state courts.

Based upon the foregoing, the Court concludes that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an

14

unreasonable application of, clearly established federal law.  As such, petitioner is not entitled to summary judgment on this issue.  His petition for habeas relief as to these matters should also be dismissed.

**B.     CLAIM 2:  EIGHTH AMENDMENT CLAIM**

Petitioner asserts that his life sentence without the possibility of parole violates the Eighth Amendment's prohibition against cruel and unusual punishments because it is excessive, grossly disproportionate to the crime committed, and grossly disproportionate to sentences against persons similarly situated.  On direct appeal, the South Dakota Supreme Court rejected petitioner's claim, holding: petitioner's sentence did not shock the conscience, so as to constitute cruel and unusual punishment, given petitioner's criminal history and absence of remorse. Because petitioner's claim was adjudicated on the merits by the South Dakota Supreme Court, the deferential standard of § 2254(d)(1) applies.

The Eighth Amendment[5] prohibition of cruel and unusual punishments, which applies to the states through the Fourteenth Amendment, Wilson v. Seiter, 501 U.S. 294, 296-97, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), requires an inquiry into whether a punishment is "grossly disproportionate" to the crime. Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S.Ct. 2680, 2705, 115 L.Ed.2d 836 (1991) (opinion of Kennedy, J., concurring in part and concurring in the judgment) (*quoting* Solem v. Helm, 463 U.S. 277, 288, 303, 103 S.Ct. 3001, 3008, 3016-17, 77 L.Ed.2d 637 (1983)); *accord* United States v. Jones, 965 F.2d 1507, 1518 (8th Cir. 1992).  This inquiry, however, is quite narrow, United States v. Prior, 107 F.3d 654, 660 (8th Cir. 1997) (*citing* United States v. Frieberger, 28 F.3d 916, 920 (8th Cir. 1994)), and applies to both capital and noncapital sentences.  *See* Ewing v. California, 538 U.S. 11, 20-23, 123 S. Ct. 1179, 1185-1187, 155 L. Ed. 2d 108 (2003).  The constitutional principle of grossly disproportionate is also "tempered by the corollary proposition that the determination of prison sentences is a legislative prerogative which is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (*citing* Rummel v. Estelle, 445 U.S. 263, 274-76, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980)).  Consequently, federal courts have traditionally deferred

---

[5]  The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

to state legislatures with respect to sentencing matters.  *cf.* Harmelin, 501 U.S. at 998 ("[A]s a general matter [it] is properly within the province of legislatures, not courts" to fix punishments for crimes; thus, "reviewing courts . . . should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes") and United States v. Parker, 241 F.3d 1114, 1117 (9th Cir. 2001) (rejecting constitutional challenge on federal statute imposing mandatory consecutive sentences for using or carrying a firearm during and in relation to a bank robbery and stating, "[g]enerally, as long as the sentence imposed on a defendant does not exceed statutory limits, this court will not overturn it on Eighth Amendment grounds").

When adjudicating an Eighth Amendment proportionality challenge, the Court begins by weighing the gravity of the offense against the severity of the sentence. Prior, 107 F.3d at 658. Then, if the Court determines that the sentence is grossly disproportionate to the offense, the Court compares sentences for similar crimes in the same jurisdiction and sentences for the same crimes in other jurisdictions.  *Id.*  Only if the Court concludes in the first inquiry that the sentence is grossly disproportionate to the offense, does the Court proceed to consider the intra-jurisdictional and inter-jurisdictional inquiries.  *Id.*  If the Court concludes that the sentence is not grossly disproportionate, the inquiry is finished.  *Id.*

Here, the issue of whether petitioner's sentence is unconstitutionally excessive turns on whether petitioner's punishment arrives at this threshold level of gross disproportionality.  The Supreme Court noted the inherent subjectivity in making this threshold determination in Rummel, 445 U.S. at 304, and noted that outside the capital punishment context, successful proportionality challenges are "exceedingly rare" and constitutional violations are therefore reserved only for an "extreme" "extraordinary case." Ewing, 538 U.S. at 21 and 30, Lockyer, 538 U.S. at 73 and 77, and Prior, 107 F.3d at 658 (*citing* United States v. Goodface, 835 F.2d 1233, 1236-1237 fn. 4 (8th Cir. 1987).

Contrary to petitioner's argument in the instant case, the grossly disproportionate sentencing analysis is not limited to the proportionality of the "triggering" conviction to the resulting sentence.  When a habeas petitioner has been sentenced under a habitual offender statute, a federal court must consider "the seriousness of his most recent offense, not as it stands

alone, but in the light of his prior offenses." Ewing, 538 U.S. at 29 and McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.1992). As the Supreme Court noted in Ewing,

> "any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the triggering offense: [I]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law."

Id. See also Rummel, 445 U.S., at 276 and Solem, at 296. "Enhanced sentences under recidivist statutes like South Dakota's habitual offender statute serve the legitimate goal of deterring and incapacitating repeat offenders." Id. at 20. Accordingly, state legislative policies directed to the problem of criminal recidivism are an important factor and are entitled to great deference in weighing the gravity of the offense for which an enhanced sentence is given under state repeat offender laws. Id. at 29-30.

Petitioner's triggering conviction under the South Dakota's habitual offender statute was a conviction for sexual contact with his eight year-old niece. Prior felony convictions included third-degree burglary, first-degree burglary, and sexual contact with a minor. In fact, petitioner's criminal record includes twenty eight convictions, thirteen involving crimes of violence and seven involving death threats. So, the gravity of his offense was not only sexual contact with his eight year old niece, but also all of his prior felony convictions.

The Supreme Court has shown no hesitation in upholding the constitutionality of lengthy sentences imposed under state recidivist statutes. See Rummel, 445 U.S. 263. Given the gravity of petitioner's criminal record, I have no hesitation in upholding his life sentence. Petitioner's sentence of life in prison without the possibility of parole, while obviously severe, was imposed with a reasonable explanation by the trial court and was not, under the circumstances, an abuse of the court's discretion or an extreme case that would violate the Eighth Amendment. Further, the Court's conclusion is not altered by petitioner's arguments that the trial court failed to consider his individualized circumstances, or was motivated solely by the desire to punish petitioner and protect society without considering petitioner's rehabilitative potential. Consequently, while the

17

petitioner's sentence is severe, it is not so grossly disproportionate as to require a comparison to the sentences of others or as to offend the Eighth Amendment.

In view of the foregoing, the Court concludes that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Additionally, petitioner's case here does not fall within the realm of an exceedingly rare or extreme case, and petitioner is not entitled to summary judgment on this issue or to habeas relief on such issue.

## C.   CLAIM 3: DUE PROCESS CLAIMS

Petitioner asserts that he was denied his Fourteenth Amendment[6] due process rights in three particular respects: (1) the trial court improperly denied his motion for continuance on the first day of trial; (2) the state improperly elicited testimony concerning a prior conviction for sexual contact with a minor; and (3) the state introduced impermissible vouching testimony. Before addressing these specific claims, I note the standard for establishing a due process claim in a habeas petition:

> To determine whether a due process violation has occurred, a court must examine the totality of the circumstances and determine whether "the error was so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process." *Mercer v. Armontrout*, 844 F.2d 582, 587 (8th Cir. 1988).

Amrine v. Bowersox, 238 F.3d 1023, 1032-33 (8th Cir. 2001) (denying habeas petitioner's due process claim).

Having said this, I will now consider each individual claim. Petitioner first argues that the refusal of the trial judge to grant a continuance on the first day of trial was so fundamentally unfair as to prejudice his right to a fair trial. Specifically, petitioner claims that his right to a fair trial was compromised because he could not adequately prepare expert testimony or a defense based upon untimely disclosure of critical evidence and because he could not secure the presence

---

[6] The Fourteenth Amendment provides, in relevant part, that "nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

18

and testimony of witnesses.  I review this claim *de novo* because petitioner's challenge was not adjudicated on the merits.

Federal habeas corpus courts afford broad discretion to state trial courts on matters of continuances.  Morris v. Slappy, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).  Trial judges necessarily require a great deal of latitude in scheduling trials.  *Id.*  Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden weighs against continuances.  *Id.*

Because the matter of a continuance is traditionally within the discretion of the trial court, not every denial of such a motion violates one's due process rights or renders ineffective the assistance of his counsel.  Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).  Whether denial of a continuance is arbitrary enough to violate due process depends on the "circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  United States v. Bernhardt, 642 F.2d 251, 252 (8th Cir. 1981) (*quoting* Ungar, 376 U.S. at 589)).  So, in determining whether the trial court has abused its discretion, the reviewing court considers "whether counsel had sufficient time to prepare for trial . . . whether counsel's conduct at trial showed that he was well prepared; [and] whether the court's refusal to grant a continuance prejudiced the defendant."  Nerison v. Solem, 715 F.2d 415, 418 (8th Cir. 1983), and United States v. Heine, 920 F.2d 552, 555 (8th Cir. 1990) (per curiam) (*citing* United States v. Sheehy, 670 F.2d 798, 799 (8th Cir.1982)).  However, "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay," Morris, 461 U.S. at 11-12 (*quoting* Ungar, 376 U.S. at 589), may give rise to a violation of due process.

Considering the totality of the circumstances, I cannot say that the trial court abused its discretion in this case.  Petitioner had ample time to prepare for trial.  This was his second trial on these charges.  The South Dakota Supreme Court's order remanding for a new trial was issued on November 29, 1995.  Petitioner's second trial was originally scheduled to commence on February 21, 1996.  But, petitioner requested a continuance based upon adverse pretrial publicity.  The trial court granted this motion and set the trial date for June 12, 1996.  Then on May 28, 1996, the trial court reaffirmed its prior finding that petitioner was competent to waive his right

19

to counsel.  The very next day, the trial court conducted a pretrial motion hearing and reset the trial for June 11, 1996.  Not counting the interim period between the remand and the pretrial motions hearing on May 29, 1996, petitioner had thirteen days to prepare for trial.

Further, petitioner did not exercise diligence in hiring his expert or in preparing his expert's testimony.  At the May 29th hearing, petitioner made a motion to present expert testimony on the issue of post-traumatic stress disorder.  The state objected to the motion.  The trial court afforded petitioner wide latitude and permitted petitioner to hire an expert witness on the condition that petitioner get "him on board and his report prepared so that it is done prior to trial."  Petitioner did not do this.

Instead, on the day of trial, petitioner brought a second motion for continuance.  The parties met in chambers to argue the motion.  Petitioner argued that a continuance was warranted because he had been given an insufficient amount of time to work with his expert.  In fact, petitioner complained that he had not talked with his expert until the day before trial.  The state objected to the continuance.  The state noted that, even though the prosecutor did not view it as his responsibility, he had facilitated a meeting between petitioner and his expert.  Additionally, the state said that petitioner had not taken any steps to secure a court order to pay the expert or to communicate with the expert about payment for services.  This ended up being done by the state.  After hearing the parties arguments, the trial court denied the motion for continuance.  However, the trial court told petitioner that it would allow him to work with his expert that evening and that it would allow his expert to testify on the last day of the trial.  The trial court then arranged a meeting between petitioner and his expert.  Consequently, had it not been for the exceptional efforts by the state and the trial court, petitioner would not have been able to introduce the expert testimony.

In addition, petitioner fails to show, as he must, any prejudice stemming from the court's refusal to grant his continuance.  Petitioner's expert testified at length during the trial.  Moreover, petitioner has not substantiated in any way how his expert's testimony would have been any different had a continuance been granted.  Petitioner's argument essentially is a bald assertion of prejudice.  Accordingly, petitioner's prejudice claim is without merit and he is not entitled to summary judgment or to habeas relief.

Next, petitioner argues for the first time that the denial of his motion for a continuance prejudiced his defense by preventing him from locating a witness, Ms. Rebecca Glasford, who was material to his defense. A review of the record, however, does not support such a conclusion. Petitioner subpoenaed Ms. Glasford, so that any failure to secure her presence at trial was petitioner's fault, not the state's fault. In any event, even though petitioner was unable to secure her presence at trial, he was able to enter into a stipulation with the state setting forth the facts that he was seeking to introduce through Ms. Glasford. Consequently, summary judgment and habeas relief is unwarranted because petitioner suffered no prejudice from Ms. Glasford's failure to testify or from the trial court's refusal to grant a continuance for this reason.

Finally, petitioner argues that his due process rights were violated by the state's failure to timely disclose DSS reports and group progress notes from the victim's therapy sessions. While petitioner is correct that this evidence was not immediately disclosed after it was requested[7] by petitioner, the record indicates the evidence was disclosed within a reasonable time to allow petitioner to take advantage of it. See Nassar v. Sissel, 792 F.2d 119, 121 (8th Cir. 1986) (Due process is generally satisfied if evidence is disclosed in time for the defense to take advantage of it). Further, petitioner has failed to show any prejudice from the denial of a continuance based on the state's late disclosure of evidence. Therefore, the trial court's refusal to grant petitioner a continuance due to the late disclosure of evidence did not deny petitioner a fair trial, and he is not entitled to summary judgment or to habeas relief on this issue.

Petitioner's second claim for habeas relief is that his due process rights were violated when the state elicited testimony that petitioner had a prior conviction for sexual contact with a minor. This argument has no merit. A defendant cannot complain about the admission of bad acts evidence when he himself opens the door, either by introducing the subject or by advancing a theory that makes his prior acts relevant on an issue other than his propensity to commit the crime. See, e.g., United States v. Sarault, 840 F.2d 1479, 1485-86 (9th Cir. 1988) (holding other crimes evidence admissible, even in the prosecution's case-in-chief, when relevant to refute a defense that the accused clearly intends to advance). Petitioner's theory of the case was that he

---

[7] Petitioner requested copies of the victim's DSS reports and group progress notes at the 02/14/1996 hearing and the victim's psychological evaluations at the 04/24/1996 hearing.

was unfairly targeted for prosecution based on his prior conviction for sexual contact. Additionally, the South Dakota Supreme Court observed that petitioner had admitted his prior conviction for sexual contact at least twenty-three times during the retrial. Raymond, 563 NW2d at 828. Accordingly, petitioner is not entitled to habeas relief or summary judgment when the state elicited testimony that petitioner had previously been convicted for sexual contact with a minor because he himself opened the door to this testimony.

Petitioner's final claim for habeas relief is the introduction of impermissible vouching testimony when a state social worker testified that the victim's explanation for what petitioner did to the victim "sounded logical." Specifically, he complains that this expert witness testimony deprived him of a fair trial by taking away from the jury the question of whether sexual abuse occurred. Petitioner is correct that experts may not be used to assess a witness's credibility because "[i]t is the exclusive province of the jury to determine the believability of the witness." Bachman v. Leapley, 953 F.2d 440, 441 (8th Cir. 1992) (citing United States v. St. Pierre, 812 F.2d 417, 419 (8th Cir. 1987)). Moreover, "an expert is not permitted to offer an opinion as to the believability or truthfulness of a victim's story." Id. (citing United States v. Spotted War Bonnett, 882 F.2d 1360, 1362 (8th Cir. 1989)). Nor may an expert pass judgment on a witness' truthfulness in the guise of a professional opinion. United States v. Whitted, 11 F.3d 782, 785-86 (8th Cir. 1993). If such testimony is admitted, the Court must decide whether the wrong is of a constitutional dimension; that is, whether it is so prejudicial as to be fundamentally unfair, thus denying the defendant a fair trial. Bachman, 953 F.2d at 441 (citing Adesiji v. State, 854 F.2d 299, 300 (8th Cir. 1988)).

I would not, as a trial judge, have admitted such opinion testimony but that is not the test. There is no bright line test for when such testimony crosses the line into the exclusive province of the jury. Parker v. Scott, 394 F.3d 1302, 1312 (10th Cir. 2005). To the extent the testimony elicited could be considered vouching, petitioner cannot establish that the limited reference to the statement, 'sounded logical,' "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The social worker expressed no opinion as to the truthfulness of the victim

22

or whether sexual abuse by petitioner had occurred.  Additionally, the jury was instructed that they are the sole judges of credibility and are not bound by an expert's opinion.  Therefore, the prosecution witness did not violate petitioner's due process rights by improperly bolstering the credibility of the child's testimony and therefore, petitioner is not entitled to summary judgment or to habeas relief on this issue.

### ORDER

Based upon the foregoing,

IT IS ORDERED:

1.  Petitioner's motion for summary judgment (Doc. 47) is denied.

2.  Petitioner's motion for leave to file excess pages (Doc. 49) is granted.

3.  The second amended petition for writ of habeas corpus (Doc. 38) is denied and this action is dismissed on the merits.

Dated this 5th day of March, 2008.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:

JOSEPH HAAS, CLERK

BY: _____ DEPUTY

(SEAL)

23